Fox *v.* The Allensville, Center Square, and Vevay Turnpike Company.

TURNPIKE.—*Organization of Company.*—*Subscription of Stock.*—It is not essential to the organization of a turnpike company, under the statute, that the whole amount of the capital stock as fixed by the articles of association shall be subscribed; it is sufficient if the stock subscribed amounts to five hundred dollars per mile of the proposed road.

SAME.—*Residence of Stockholders.*—It is not a valid objection to the organization of a turnpike company, that the residence of a few of the subscribers of stock to the articles of association is not stated, where the residence of a sufficient number, whose subscriptions amount to five hundred dollars per mile of the proposed road, is stated.

SAME.—*Pleading.*—*Board of Directors.*—*Election of.*—Under the statute requiring that "not less than three nor more than seven directors shall be elected by the stockholders" of a turnpike company, it is sufficient to aver, in a complaint on the subscription of stock, the fact that a board of directors was elected by the stockholders, without alleging the mode of election.

SAME.—*Notice.*—In an action by a turnpike company on the subscription of stock, though the giving of notice of the call for the payment of subscriptions is necessary before the action is commenced, and the giving of such notice must be averred in the complaint, yet the notice is not the foundation of the action and need not be made part of the complaint by copy.

SAME.—*Time.*—*Publication of Notice.*—Where notice of the time and place of payment of stock subscriptions to a turnpike company is required by statute to be given for thirty days by publication in a newspaper, it is sufficient, in an action on the subscription, to allege that such notice was given on the second day of March for payment to be made on the first day of April.

SAME.—*Representations by Stock Solicitor.*—It is no defence to an action on a subscription of stock to a turnpike company, that the person soliciting the defendant's subscription, appointed by those who had already subscribed and who afterward became members of the company upon its organization, represented that the road would be constructed in a certain manner, which has not been done.

SAME.—*Evidence.*—*Calls.*—*Payment.*—The entry in the record book of the board of directors of a turnpike company signed by the secretary is competent evidence of the act of the board requiring payment from subscribers to the capital stock; and although such entry may not specify any time when the payment shall be made, yet if it direct a call to be made for the payment and notice thereof to be published, the payment is thereby required as soon as notice specifying the time of payment can be given.

PRACTICE.—*New Trial.*—That the court erred in rejecting evidence, or that the court erred in admitting evidence, is too general a statement of a reason for a new trial.

From the Switzerland Circuit Court.

*J. A. Works* and *J. D. Works*, for appellant.

*C. E. Walker* and *W. R. Smith*, for appellee.

WORDEN, C. J.—This was an action by the appellee against the appellant upon his subscription to the capital stock of the company. The subscription sued upon was contained in the articles of association, which are set out and made a part of the complaint. The complaint contained such averments as show a due organization of the company.

Issue, trial, verdict and judgment for the plaintiff, a motion for a new trial being overruled, and exception taken.

There was a demurrer to the complaint for want of sufficient facts overruled, and exception. The defendant answered in four paragraphs, the first being the general denial, the other three being special. Demurrers for want of sufficient facts were sustained to the second, third, and fourth paragraphs of the answer, and the defendant excepted. These rulings on the demurrers are assigned for error.

The complaint is long and need not be set out in order to an understanding of the objections made to it.

The amount of the capital stock of the company, as fixed by the articles of association, is fifteen thousand dollars, and the whole amount does not appear to have been subscribed for. It is claimed that this is fatal to the existence of the corporation. The statute on the subject provides that the articles of association shall specify the amount of the capital stock and the number of shares into which it is divided, and that "whenever the stock subscribed amounts to the sum of five hundred dollars per mile of the proposed road, copies of the articles of association shall be filed in the office of the recorder of each county through which the road is to pass, and shall from that time be a corporation, known by the name assumed in [its] articles of association." We are of opinion that under these statutory provisions, the whole amount of the capital stock, as fixed by the articles

of association, need not be subscribed before the corporation can be brought into existence. The case of *Hoagland* v. *The Cincinnati and Fort Wayne Railroad Co.*, 18 Ind. 452, is in point. All that is necessary in this respect is, that there shall be subscriptions of stock to the amount of five hundred dollars per mile of the proposed road. This amount appears to have been subscribed.

It is also objected that the residence of some of the subscribers is not stated. The residence of a few of the subscribers is not stated, but without them there is more than enough subscribed to amount to the five hundred dollars per mile of the proposed road. This objection, therefore, is not valid. See *Busenback* v. *The Attica and Bethel Gravel Road Co.*, 43 Ind. 265.

It is further objected that the complaint does not show a valid election of directors of the corporation. It alleges, " that pursuant to said statute, a board of directors of said company was elected by the stockholders thereof, in all respects as required by said statute, which board of directors so elected were duly qualified, and entered upon the discharge of duty as such board of directors," etc. It is urged that this "does not show how the directors were elected, but pleads a mere conclusion, and not facts." The statute, in section 2, provides, that "not less than three nor more than seven directors shall be elected by the stockholders of every such corporation, who shall hold their office for one year and until their successors are in like manner elected," etc. In glancing through the statute, we do not discover that any provision is therein made as to the manner of electing directors, whether by ballot or *viva voce*. The allegations in the complaint are as explicit as the statute. We think the complaint sufficient. It alleges that the directors were elected by the stockholders. This is all the statute requires. The mode of conducting the election is not material, it being done by the proper persons. The words in the complaint " in all respects as required by said statute" may be stricken

out as surplusage, and then there will be no conclusion of law stated, but the simple averment of fact that the directors were elected by the stockholders. We need not inquire whether, in an action on a subscription for stock, advantage could be taken of an irregularity in the election of a board of directors.

It is next objected that the notice of the call for the payment of subscriptions is not made a part of the complaint. This, in our opinion, was not necessary. The notice of calls was not the foundation of the action, but the written subscription. To be sure, an action could not be maintained on the subscription until notice of the calls had been given as provided for in section 11 of the act above cited, but the notice is, nevertheless, not the foundation of the action, and need not be set out by copy. The complaint clearly avers the making of the call and the giving of notice thereof as required by the section above cited. The counsel for the appellant, in their brief, say, "there is no allegation that notice was given, for thirty days, of the time and place the subscribers were required to pay their subscriptions, nor is there anything in the complaint to show how often the notice was published, if more than once, a defect that we think must be fatal." We copy the complaint in respect to the giving of the notice: "That on the 2d day of March, 1872, plaintiff gave notice that all of said subscription was by order of the company due, and must be paid to the treasurer of said company, David Scott, at his residence in Jacksonville, Indiana, on or before the first day of April, 1872, by publishing the same in the Vevay Reveille, a newspaper printed in said county," etc.

The publication made on the 2d of March, for payment on the 1st of April, would, by adopting the ordinary rule of including one of the days and excluding the other, be a publication thirty days before the specified time of payment. We believe it is the settled practice in this State to serve process on Friday for the court sitting on the second succeeding Monday, and this is regarded as ten days' service

MAY TERM, 1874. 35

Fox *v.* The Allensville, Center Square, and Vevay Turnpike Co.

before court. To make ten days, either the Friday or Monday must be counted. In the case before us, counting the day on which the notice was published, thirty days intervened before the 1st day of April, the time required by the statute. Upon looking into the statute on the subject of notice, section 11 above cited, we are of opinion that where notice is published in a newspaper, but one publication is required to be made, and this must be made thirty days before the specified time of payment.

We have thus considered the objections urged to the complaint. They are all, in our opinion, unfounded, and there was no error committed in overruling the demurrer thereto.

The second paragraph of the answer alleged that in the articles of association it was stipulated that the capital stock of the company should be fifteen thousand dollars; that the defendant, relying on the same, subscribed, etc.; that the company has never had a capital stock of more than three thousand dollars, and not enough to build the proposed road, etc. This paragraph is clearly bad, and the demurrer to it was correctly sustained. We deem it unnecessary to add any thing to what was said upon this point in considering the complaint.

In the third paragraph of his answer, the defendant alleged that he was induced to make his subscription by the solicitation of one John P. Bates, who was appointed by the original subscribers of the articles of association, and who are now members of the corporation, to procure stock subscriptions; that Bates, in order to procure the defendant to subscribe, falsely and fraudulently represented to him that the turnpike was to be constructed twelve feet wide, the stone to be one foot deep, and that there was to be an earth track made at the side of the same; whereas the road, so far as it has been constructed, has been made but nine feet wide, without any earth track at the side; and that the directors have ordered the road to be constructed but nine feet wide; that the defendant subscribed by reason of the false and fraudu-

lent representations, relying on the same, and without which he would not have subscribed; wherefore, etc.

This paragraph of the answer was palpably bad, and the demurrer to it correctly sustained. At the time of the defendant's subscription, there was no corporation in existence to be bound by the representations of Bates or to be in any manner affected thereby, nor was he the agent of any corporation. Besides this, the representations were not such as the defendant had any right to rely upon. Neither the signers of the articles of association, nor any one representing them as their agents, could determine what should be the manner of constructing the road. Section 3 of the statute above cited provides, that "the directors may determine the particular manner of construction so as to secure and maintain a smooth and permanent road, the track of which shall be made either of plank, stone, gravel, or other hard material, or in such proportions of either as the directors may deem expedient, so that the same shall form a hard and even surface."

The directors being thus empowered to determine the manner of constructing the road, it is apparent that the defendant had no right to rely upon any representations as to the manner of construction, because he must have known that the particular manner represented might, or might not be adopted by the directors. The fourth paragraph was substantially like the third, and the demurrer thereto was correctly sustained.

We have passed upon all the questions arising upon the pleadings, and now proceed to consider the motion for a new trial.

The following were the reasons for a new trial:

1st. The finding of the jury is contrary to law.

2d. The verdict of the jury is contrary to the evidence.

3d. The court erred in ruling out testimony offered by defendant.

4th. The court erred in admitting testimony offered by the plaintiff and objected to by the defendant at the time.

5th. The court erred in the charges given to the jury on his own motion.

The third and fourth reasons are too indefinite to raise any question. What testimony was admitted, or what rejected, is not stated or in any way pointed out. In relation to the fifth, it may be observed that the charges alluded to are not in the record. This leaves the first and second only to be considered, and they involve but one question, viz., whether the verdict is sustained by the evidence. We think it is. Indeed there is but one point in respect to which we have had any doubt. That point is in relation to the call made for payment of subscriptions. The statute provides, that "it shall be lawful for the directors to require payment from subscribers to the capital stock of the sums subscribed by them, at such times, and in such proportions, and on such conditions as they shall see fit," etc., "and they shall give notice of the payments thus required, and of the time and place, when and where, at least thirty days previous to the time when such payment is required to be made, in a newspaper printed in the county," etc.

The plaintiff read from her record book the following entry:

"February 24th, 1872.

"Center Square, Indiana.

"The Board of Directors of the Allensville, Center Square, and Vevay Turnpike Company met at the above named place, when it was ordered that a call be made for the full amount of subscription on the original subscription of said company; that said call be published in the Vevay Reveille.

"JAMES B. MORRISON, Sec'y."

Notice was accordingly published on the 2d of March, that the directors had required payment of the whole amount of subscriptions to the treasurer of the company, David Scott, at his residence in Jacksonville, Indiana, on or before the 1st day of April, 1872. This notice was signed by John Stewart, president, and J. B. Morrison, secretary.

It is objected that the entry from the record book is noth-

ing more than the statement of the secretary that the call was made. We think, however, that the record purports to be a record of the acts of the directors, and that it shows the call to have been made by them. The call was for the whole amount of the subscriptions. This was doubtless within the power of the board of directors, as it was to make the call unconditional. The entry in the record of the call does not state when, or to whom, or where payment was required to be made. The statute does not require such statement except as to time. In giving notice, the time and place of payment must be specified. We think the order of the directors, making the call, contemplated payment as soon as the proper notice could be given, and they ordered the notice to be given. The notice having been given for the proper length of time, specifying the time and place of the required payment, we are of opinion that the proceedings were in substantial compliance with the statute.

The judgment below is affirmed, with costs.